1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   DANIEL SCHUCHARDT, et al.,              Case No.  15-cv-01329-JSC

8                 Plaintiffs,

9        v.                                 **ORDER GRANTING PRELIMINARY
                                            APPROVAL OF CLASS ACTION**
10  LAW OFFICE OF RORY W. CLARK,            **SETTLEMENT**

11                Defendant.                Re: Dkt. No. 45

12

13        Plaintiffs Daniel Schuchardt ("Schuchardt") and Michelle Muggli ("Muggli" and, together,

14  "Plaintiffs") bring this pre-certification class action on behalf of themselves and a putative class of

15  consumers against Defendant Law Office of Rory W. Clark, A Professional Law Corporation

16  ("Defendant"), alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15

17  U.S.C. § 1692, and corresponding sections of the Rosenthal Fair Debt Collection Practices Act

18  ("Rosenthal Act"), Cal. Civ. Code § 1788, arising out of the language in the initial debt collection

19  letters that Defendant sent to Plaintiffs and the rest of the putative class.  Specifically, Plaintiffs

20  contend that the initial communication notice misrepresented their rights by failing to notify them

21  that certain statutory rights would be triggered only by the recipients' disputing the debt in

22  writing, not just orally.  Now pending before the Court is Plaintiffs' unopposed motion for

23  preliminary approval of a class action settlement.  (Dkt. No. 44.)[1]  After reviewing the proposed

24  settlement, and with the benefit of oral argument and post-hearing submissions, the Court

25  GRANTS the motion as outlined below.

26

27

28  ---
    [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

**BACKGROUND**

**A.      Factual Background**

The following undisputed facts are based on the parties' recitation of undisputed facts described in their briefing on Defendant's motion for summary judgment.

Defendant is a law firm that engages in debt collection on behalf of several clients, including Bank of America, N.A.  Plaintiffs, who are "consumers" within the meaning of the FDCPA, incurred debts to Bank of America primarily for personal, family, or household purposes. When their debts became delinquent, Bank of America referred them to Defendant to initiate collection litigation.  On January 2, 2015, Defendant mailed Plaintiffs collection letters regarding their Bank of America debts.  (Dkt. Nos. 1-1, 1-2.)  These letters were the initial communication between Plaintiffs and Defendant, and they were the only communication sent to Plaintiffs for the next five days.  The letters provide, in relevant part:

> If you notify this firm within thirty (30) days after your receipt of this letter, that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you.  Upon your written request within the same thirty-day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after your receipt of this letter, we will assume that the debt is valid.

(*Id.*)  Neither Plaintiff contacted Defendant, either orally or in writing, to lodge a dispute about the debt, request a validation, or otherwise seek more information about the debt within 30 days of receipt of the debt collection letter.

**B.      Procedural History**

Plaintiffs filed the instant class action complaint on March 23, 2015 under Section 1692g(a)(4) of the FDCPA and Section 1788.17 Rosenthal Act, alleging that the statement misrepresented the rights of consumers by failing to inform Plaintiffs that their dispute of debt must be in writing.  (Dkt. No. 1.)  Defendant answered soon after, and the parties commenced limited discovery.  At the case management conference on July 16, 2015, they agreed to stay discovery and class certification briefing until after resolution of a discrete, dispositive legal issue:

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  whether the language in the letter is misleading insofar as it misrepresents Plaintiffs' statutory

2  rights to request a debt validation.  In accordance with that discussion, the parties fully briefed

3  Defendant's motion for summary judgment (Dkt. Nos. 30-32), but prior to the hearing the parties

4  submitted a joint notice of class action settlement.  (Dkt. No. 34.)  Plaintiffs filed the instant

5  motion for preliminary approval of the parties' agreement, and the Court held a hearing on the

6  motion on January 7, 2016.  Plaintiffs subsequently filed a supplemental submission addressing

7  concerns the Court raised at the hearing.  (Dkt. No. 49.)  This submission included a revised

8  Settlement Agreement, revised Class Notice, and a declaration of Matthew Kumar, counsel for,

9  and president and sole shareholder of, Defendant.[2]  (Dkt. Nos. 49-1, 49-2.)

10                              **SETTLEMENT PROPOSAL**

11          At some point after the complaint was filed, the parties engaged in settlement discussions.

12  The Court presumes these were informal settlement negotiations, as the parties' chosen

13  Alternative Dispute Resolution ("ADR") process was not set to begin until later in the year.  (*See*

14  Dkt. No. 28.)  After fully briefing Defendant's summary judgment motion in September 2015, the

15  parties apparently engaged in further informal settlement negotiations that led to the instant

16  settlement agreement. At that point, this action had been pending for a total of six months.  The

17  parties had engaged in limited discovery before all discovery was stayed, and their deadline to

18  complete Early Neutral Evaluation had been stayed as well.  (Dkt. No. 26, 29.)  There is no

19  information before the Court about the scope of the parties' negotiations or whether a neutral third

20  party participated.  The parties ultimately agreed to the Settlement Agreement before the Court.

21  (Dkt. No. 44-1.)  The key provisions are as follows.

22  **A.      Estimated Class Size**

23          The parties define "Class Members" to include:

24              All persons with a California address to whom Law Office of Rory
                W. Clark, A Professional Law Corporation mailed an initial debt
25              collection communication that stated: "If you notify this firm within
                thirty (30) days after your receipt of this letter, that the debt or any
26              portion thereof, is disputed, we will obtain verification of the debt or

27  _____

28  [2] In this Order, the Court refers to the revised settlement agreement and revised class notice
    submitted after the hearing as the Settlement Agreement and Class Notice, respectively.

1    a copy of the judgment, if any, and mail a copy of such verification
     or judgment to you," between June 1, 2014 and June 1, 2015, in
2    connection with the collection of a consumer debt.

3    (Dkt. No. 49-1 ¶ 1.C.)  Excluded from the Class is any person already subject to an existing

4    agreement about the debt collection communication, any person who is deceased, and any person

5    who has filed for bankruptcy protection under Title 11 of the United States Code.  (*Id.*)  In the

6    Settlement Agreement, Defendant represents that there are 1,361 Class Members, including

7    Plaintiffs.  (*Id.*)

8    **B.      Settlement Consideration**

9           The Settlement Agreement provides for a Settlement Fund of $13,610, which amounts to

10   $10 for each of the 1,361 Class Members.  (Dkt. No. 49-1 ¶ 17.A.)  However, "[s]hould the Parties

11   discover that there are additional, or fewer, Class Members, the Settlement Fund will be adjusted

12   accordingly such that the Settlement Fund consists of $10.00 per Class Member."  (*Id.*)  In short,

13   the Settlement Fund may be adjusted up or down so that each Class Member receives a $10.00

14   award.  (*See id.*)

15          Separate from the Settlement Fund, the Settlement Agreement provides that Defendant will

16   pay $1,000.00 to each named Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i).[3]  Apart from this

17   statutory award, neither Plaintiff seeks an incentive award for their service to the Class.  Also

18   separate from the Settlement Fund, the Settlement Agreement provides that Defendant will pay

19   Class Counsel's attorneys' fees, costs, and expenses, as well as the costs of settlement

20   administration.  (Dkt. No. 49-1 ¶¶ 17.D, E.)  With respect to attorneys' fees and costs, the

21   Settlement Agreement provides that Class Counsel will not seek more than $55,000, and that

22   Defendant will not challenge any requested fees, costs, and expenses up to $40,000.  (*Id.* ¶ 17.D.)

23   As for settlement administration, the Settlement Agreement itself does not set a maximum amount

24   for such costs, nor does the Notice include any estimate of administration costs.  (*Id.* ¶ 17.E.)

25

26   ─────────────────────
     [3] Section 1692k(a)(2)(B)(i) provides that "any debt collector who fails to comply with any
27   provision of this subchapter with respect to any person is liable to such person in an amount equal
     to the sum of . . . in the case of a class action, (i) such amount for each named plaintiff as could be
28   recovered under subparagraph (A)[.]"  Subparagraph (A), in turn, provides for liability for "such
     additional damages as the court may allow, but not exceeding $1,000[.]"

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Lastly, the Settlement Agreement includes a non-monetary term of relief: Defendant will

2 no longer use the language at issue in this case in its initial debt collection letters.  (*Id.* ¶ 17.C.)

3 Specifically, instead of stating that if recipients "notify this firm within thirty (30) days after your

4 receipt of this letter, that the debt . . . is disputed" the firm will verify the debt and mail the

5 verification to the recipient, the letter will notify recipients that they must notify Defendant *in*

6 *writing* if they dispute all or a portion of the debt in order trigger Defendant's obligation to verify

7 the debt and mail the recipient any such verification.  (*Id.*)

8 **C.      Claims & Exclusion Procedures**

9    Class Members may request exclusion by mailing an electronic or written request for

10 exclusion identifying their name, address, telephone number, and email address along with a

11 statement that he or she wishes to be excluded.  (Dkt. No. 49-1 ¶ 9-10.)  Any Class Member who

12 submits a valid and timely exclusion request will not be bound by the Settlement Agreement

13 terms.  (*Id.* ¶ 11.)  Any Class Member who does not submit a written claim form within 60 days

14 from the deadline for dissemination of Class Notice will be bound by the Settlement Agreement.

15 (*Id.* ¶ 9.)

16    The Settlement Fund will then be distributed to the Class Members who do not opt out of

17 the Class.  Class Members need not submit a claim form; instead, Class Members who do nothing

18 will become part of the Class, be bound by the Settlement Agreement, and receive their $10 share.

19    Class Members may object to the Settlement Agreement by filing a written objection

20 within 90 days of the Court's grant of Preliminary Approval.  (*Id.* ¶ 12.)  Within the same time

21 period Class Members must provide a copy of any objection via mail or email to Class Counsel

22 and defense counsel.   (*Id.*)  The written objection must include the name of the case and case

23 number, the Class Member's full name and contact information, the reason for the objection,

24 whether the Class Member intends to appear at the final fairness hearing herself or through

25 counsel (in which case contact information for counsel must be provided), and a list of any legal

26 authority she intends to present at the hearing.  (*Id.* ¶ 13.)  Objectors are part of the Class.

27 **D.      Release of Claims**

28    Class Members agree to release all "Released Claims" against "Released Parties."  The

scope of "Released Claims" is defined as follows:

> [A]ll claims under 15 U.S.C. § 1692g(a)(4), between June 1, 2014 and June 1, 2015, that arise out of the following language in the initial debt collection letters sent by Law Office of Rory W. Clark, A Professional Law Corporation[,] to Plaintiffs or Class Members on behalf of Bank of America, N.A.: "If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you."

(Dkt. No. 49-1 ¶ 1.D.)  The Settlement Agreement defines "Released Parties" as Defendant and "each of its past, present, and future directors, officers, employees, partners, principals, insurers, co-insurers, re-insurers, clients (of which includes Bank of America, N.A.), shareholders, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company."  (*Id.* ¶ 1.E.)

**E.      Cy Pres Distribution**

The Settlement Agreement gives each Class Member 90 days from the date the Class Administrator mails settlement checks to cash the checks.  (Dkt. No. 44-1 ¶ 17.A.)  To the extent that any funds remain in the Settlement Fund after the void date—that is, uncashed checks sent to Class Members—the amount will be paid to Bay Area Legal Aid as a *cy pres* recipient.  (*Id.*)

**F.      Deadlines**

Following Preliminary Approval, the Class Administrator, Kurtzman Carson Consultants, LLC, has 60 days to provide notice of the Settlement Agreement to the Class Members in the form of written notice.  (*Id.* ¶ 7.)  Class Counsel's motion for attorneys' fees is due no later than 30 days after the deadline for dissemination of Class Notice.  (*Id.* ¶ 17.D.)  Within 60 days of Notice being mailed, requests for exclusion and objections are due.  (*Id.* ¶¶ 9, 12.)  Within 10 days of Final Approval, Defendant, in consultation with the Class Administrator, will transfer the appropriate amount into the Settlement Fund.  (*Id.* ¶ 17.A.)  The Class Administrator has 15 days from the order granting Final Approval of the Settlement Agreement to mail checks to Class Members. (*Id.*)  If Class Members do not cash their checks within 90 days after mailing, the check becomes void and the amount will be distributed to Bay Area Legal Aid as *cy pres* recipient.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

A class action settlement must be fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).
When, as here, parties reach an agreement before class certification, "courts must peruse the
proposed compromise to ratify both the propriety of the certification and the fairness of the
settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  If the Court temporarily
certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation,"
then the class will be notified and a final "fairness" hearing scheduled to determine if the
settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23.
*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5
(N.D. Cal. Nov. 21, 2012).

**A.     Conditional Certification of the Settlement Class**

Congress has expressly recognized the propriety of a class action under the FDCPA by
providing special damages provisions and criteria in 15 U.S.C. § 1692(k) and (b) for FDCPA class
action cases.  These sections provide in relevant part:

> (b) In determining the amount of liability in any action under
> subsection (a), the court shall consider, among other relevant
> factors: (2) in any class action under subsection (a)(2)(B), the
> frequency and persistence of noncompliance by the debt collector,
> the nature of such noncompliance, the resources of the debt
> collector, the number of persons adversely affected, and the extent
> to which the debt collector's noncompliance was intentional.

A plaintiff seeking a remedy under 15 U.S.C. § 1692k must meet the requirements of Rule
23.  Under that rule, class actions must meet the following requirements prior to certification:

> 1) the class is so numerous that joinder of all members is
> impracticable; 2) there are questions of law or fact common to
> the class; 3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class; and 4) the
> representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), a potential class must also meet one
of the conditions outlined in Rule 23(b)—of relevance here, the condition that "the court finds that
the questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In evaluating the proposed

class, "pertinent" matters include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun or against the class members;
>
> (C) the desirability  or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Prior to certifying the class, the Court must determine that Lead Plaintiff

has satisfied his burden to demonstrate that the proposed class satisfies each element of Rule 23.

      1.    Rule 23(a)

      a.   *Numerosity*

"Under the first Rule 23(a)(1) factor, the class must be 'so numerous that joinder of all

members is impracticable.'"  *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 144 (N.D. Cal.

2004) (citing Fed. R. Civ. P. 23(a)(1)); *Staton*, 327 F.3d at 953.  Here, Defendant admits that it

sent materially similar, if not identical, debt collection letters to approximately 1,361 California

residents within the class period.  "Joinder of 1,000 or more co-plaintiffs is clearly impractical."

*Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006).  The numerosity requirement is

therefore met.

      b.   *Commonality*

Second, to certify a class there must be "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  "[C]ommonality requires that the class members' claims 'depend on a

common contention' such that 'determination of its truth or falsity will resolve an issue that is

central to the validity of each [claim] in one stroke.'"  *Mazza v. Am. Honda Motor Co.*, 666 F.3d

581, 588 (9th Cir. 2012).  Commonality can be satisfied "by even a single common question."

*Trahan v. U.S. Bank N.A.*, No. C 09-03111 JSW, 2015 WL 75139, at *5 (N.D. Cal. Jan. 6, 2015).

"[A] debt collector's liability under § 1692e of the FDCPA is an issue of law[.]"  *Gonzales*

*v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).  Thus, commonality is generally found in FDCPA cases "where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters."  *Palmer*, 233 F.R.D. at 549; *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1124-25 (9th Cir. 2015); *see, e.g.*, *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007); *Abels v. JBV Legal Grp., P.C.*, 227 F.R.D. 541, 544-45 (N.D. Cal. 2005).  So it is here, where Plaintiffs allege that Defendant sent the same purportedly unlawful form debt collection letter to Plaintiffs and the other members of the class.  The commonality requirement has been satisfied.

           c.     *Typicality*

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense."  *Hunt*, 241 F.R.D. at 510 (citing *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiffs allege a pattern of wrongdoing based on Defendant having sent materially identical collection letters to the putative class.  Plaintiffs' claims and those of the rest of the Class Members are based on the same legal theory—that the text of the letters failed to include certain FDCPA disclosures—and seek the same recovery—statutory damages and an end to the allegedly unlawful letters.  At oral argument, Defendant confirmed that there are no Class Members who received Defendant's letter then disputed the debt orally only but did not receive validation of the debt.  Thus, none of the Class Members has suffered any harm besides receipt of the unlawful letter.  Accordingly, the harm to all Class Members is the same.  Because the Class Members were sent the same letter as Plaintiffs, suffered the same harm, and seek the same recovery, the typicality requirement is met.  *See Gonzales v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007) ("[T]his Court is persuaded that typicality is sufficiently established if the

United States District Court
Northern District of California

class representative received the same collection letters as the class members."); *Abels*, 227 F.R.D. at 545 (concluding that typicality was met where "[e]ach of the class members was sent the same collection letter as [plaintiff] and each was allegedly subjected to the same violations of the FDCPA").

> d.    *Adequacy of Representation*

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To answer this question, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988)); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (noting that adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive"); Fed. R. Civ. P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").

With respect to Plaintiffs' adequacy, as Defendant confirmed at the hearing, both Plaintiffs were allegedly harmed in the same manner as the rest of the Class Members and seek the same relief, which supports their adequacy. There is nothing in the record that gives the Court pause as to whether Plaintiffs have any conflicts with the Class Members, nor anything that otherwise causes the Court to question Plaintiffs' adequacy. The same is true of Plaintiffs' counsel. Plaintiffs are represented by Aaron D. Radbil of Greenwald Davidson Radbil PLLC. The firm, and Mr. Rabdil in particular, have been appointed class counsel in class actions around the country, including FDCPA cases, and including courts within the Ninth Circuit. (Dkt. No. 44-1 ¶ 4 (collecting cases).) Thus, it appears that the named representatives are able to prosecute this action vigorously through qualified counsel.

> *   *   *

Plaintiffs have shown for the purposes of preliminary approval that they meet all of the Rule 23(a) requirements.

1

2.   <u>Rule 23(b)</u>

2

Plaintiffs must also meet one of the provisions of Rule 23(b) to succeed on his motion for

3

class certification of the federal claims.  *See* Fed. R. Civ. P. 23(b); *Berger v. Home Depot USA,*

4

*Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).  Plaintiffs contend that they have met the requirements

5

of Rule 23(b)(3), which requires establishing predominance of common questions of law or fact

6

and the superiority of a class action relative to other available methods for the fair and efficient

7

adjudication of the controversy.

8

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be

9

a significant aspect of the case that can be resolved for all members of the class in a single

10

adjudication."  *Berger*, 741 F.3d at 1068 (internal quotation marks and alterations omitted).

11

Notably, "the predominance inquiry presumes that there is commonality and entails a more

12

rigorous analysis[.]'"  *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal. 2014)

13

(quoting *Hanlon*, 150 F.3d at 1022).  While Rule 23(a)(2) asks only whether there is a common

14

issue, the predominance inquiry considers the common questions, "focuses on the relationship

15

between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and requires the court to

16

weigh the common issues against the individual issues.  *See Dukes*, 131 S. Ct. at 2556.

17

Predominance is found when common questions represent a significant portion of the case and can

18

be resolved for all class members in a single adjudication.  *Hanlon*, 150 F.3d at 1022.

19

Here, the Court has already determined that the legality of the debt collection letters is a

20

question of law that is common to the class.  If the Court were to find that the text violated the

21

FDCPA, that single adjudication would reach the claims of all Class Members.  Other courts in

22

this District have reached similar conclusions.  *See, e.g.*, *Gold*, 306 F.R.D. at 633-34 ("At bottom,

23

the broad remedial purpose of the FDCPA compels this Court to conclude that the Rule 23(b)(3)

24

requirement of predominance is satisfied where, as here, statutory damages are sought to deter

25

debt collectors from engaging in prohibited behavior."); *Abels*, 227 F.R.D. at 547 ("Here, the

26

issues common to the class—namely, whether the Defendants' systematic policy of sending

27

collection letters, and whether those letters violate the FDCPA—are predominant.").  Defendant

28

has not offered any argument that any individualized inquiry is necessary that might preclude a

United States District Court
Northern District of California

11

finding of predominance, and the Court sees none. Predominance is therefore satisfied.

The second prong—that a class action is the superior means to adjudicate the claims raised—is also easily met. If Plaintiffs and all Class Members each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendant's liability. Every separate action would involve the same evidence—the debt collection letter—and the same legal theory. Different courts could interpret the claims differently, resulting in inconsistent rulings or unfair results. The Settlement Agreement efficiently resolves the claims of all Class Members at once. Thus, classwide resolution is superior to other methods and will avoid the possibility of repetitious litigation.

## B.     Preliminary Approval of the Class Action Settlement

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a court typically considers the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* In these cases, courts must show not only a comprehensive analysis of the above factors, but also that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on the face of the settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* In *Bluetooth*, the court identified three such signs:

> (1) when class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;

United States District Court
Northern District of California

1

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by the defendant (which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement); and

2

3

4

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

5

6   *Id.* The Ninth Circuit noted that this list is not exclusive, but offered it as guidance to district

7   courts regarding types of provisions that require "greater scrutiny than ordinarily demanded" when

8   assessing the overall fairness of a settlement. *Id.* at 949.

9        The Court cannot fully assess all of these fairness factors until after the final approval

10  hearing; thus, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252

11  F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted).  Instead, "the

12  settlement need only be *potentially* fair, as the Court will make a final determination of its

13  adequacy at the hearing on Final Approval, after such time as any party has had a chance to object

14  and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).  At this

15  juncture, "[p]reliminary approval of a settlement and notice to the class is appropriate if [1] the

16  proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2]

17  has no obvious deficiencies, [3] does not improperly grant preferential treatment to class

18  representatives or segments of the class, and [4] falls within the range of possible approval." *Cruz

19  v. Sky Chefs, Inc.*, No. 12-02705, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In

20  re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  Ultimately, "[t]he

21  initial decision to approve or reject a settlement proposal is committed to the sound discretion of

22  the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625-26 (9th Cir. 1982).

23        1.      The Fairness Factors

24              a.      *Means at Which Parties Arrived at Settlement*

25        The first factor concerns "the means by which the parties arrived at settlement." *Harris v.

26  Vector Mktg. Corp.*, No. 08-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  For the

27  parties "to have brokered a fair settlement, they must have been armed with sufficient information

28  about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D.

United States District Court
Northern District of California

at 396.  Particularly with pre-certification settlements, enough information must exist for the court to assess "the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement" to determine if it is fair and adequate.  *Id.* at 397 (internal quotation marks omitted).

The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement."  *Villegas*, 2012 WL 5878390, at *6; *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").  However, the use of a neutral mediator "is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement."  *Bluetooth*, 654 F.3d at 948.  And indeed, courts in this District have approved settlement agreements reached through information negotiations.  *See, e.g.*, *Perez v. Tilton*, No. C 05-05241 JSW, 2008 WL 686723, at *1 (N.D. Cal. Mar. 10, 2008) (noting that the court granted the parties' motion for preliminary approval of settlement reached through information negotiations).

Here, prior to reaching the Settlement Agreement, the parties engaged in only limited, informal discovery before all discovery was stayed so that the parties could brief a dispositive legal issue on summary judgment.  The parties have not made any representations about what exactly was exchanged, which ordinarily would help the Court determine whether the Settlement Agreement was the result of arm's length negotiations.  But discovery beyond the number of letter recipients, which the parties appear to have exchanged, may be of limited importance in a case like this that turns on the legal issue of identical form letters.

Nor have the parties described the scope of their settlement negotiations.  The Court has no information about how long the parties spent negotiating, whether any statements were exchanged before the parties began negotiating, and whether the parties used a neutral third party in connection with their negotiations.  Given the absence of this type of information, it appears that the parties merely engaged in informal settlement discussions on their own without the use of a mediator.  Still, Courts have approved settlements reached through informal settlement

14

1    negotiations.  *See, e.g.*, *Perez*, 2008 WL 686723, at *1.

2         On the other hand, the parties had fully briefed Defendant's motion for summary judgment

3    on that dispositive legal issue, which was whether the language of Defendant's initial collection

4    letters violated the FDCPA, but settled before the Court held oral argument or ruled on the motion.

5    In that briefing, Defendant contended that the letters accurately informed Plaintiffs and other

6    putative class members of their FDCPA rights and, if anything, provided Plaintiffs with more

7    expansive rights than the FDCPA requires.  Plaintiffs, for their part, urged that the language of the

8    letters flatly violated the FDCPA.  Through this briefing, the parties gained a fulsome

9    understanding of their respective positions on the primary legal issue in this case before reaching

10   the Settlement Agreement, which suggests that it was the product of arm's length negotiation.

11   Further, both parties were represented by experienced counsel during the course of settlement

12   negotiations, which supports the fairness of the settlement.  *See Hanlon*, 150 F.3d at 1026.

13        On balance, while the parties only engaged in limited discovery and appeared to reach the

14   Settlement Agreement only through informal negotiations, given their familiarity with each

15   other's positions and representation by experienced counsel, the Settlement Agreement appears to

16   be the product of serious, informed, non-collusive negotiation, which weighs in favor of

17   preliminary approval.

18             b.    *Obvious Deficiencies*

19        The Court next considers "whether there are obvious deficiencies in the Settlement

20   Agreement."  *Harris*, 2011 WL 1627973, at *8.

21        The first *Bluetooth* red flag is whether class counsel receives a disproportionate

22   distribution of the settlement, or the class receives no monetary distribution but counsel is amply

23   rewarded.  654 F.3d at 947.  So it is here.  The Settlement Agreement provides for a Settlement

24   Fund of $13,610.  (Dkt. No. 49-1 ¶ 17.A.)  In contrast, Class Counsel will seek between $40,000

25   and $55,000.  (*Id.* ¶ 17.D.)  This amount is between three and over four times as large as the

26   recovery that all 1,361 Class Members stand to receive, which, taken alone, may be a sign of

27   collusion.  On the other hand, the attorneys' fees and Class Members' recovery are not coming

28   from a common fund.  And the amount Class Members stand to recover—$10.00 each—is

United States District Court
Northern District of California

15

1    reasonable compared to the attorneys' fees sought given that it is a greater recovery than the

2    FDCPA itself would allow.  *See infra*, Subsection d., Range of Possible Approval (explaining that

3    the total Settlement Fund exceeds one percent of Defendant's net worth, the cap that the FDCPA

4    imposes).  Thus, this *Bluetooth* warning sign, though initially a red flag, is not a sign of collusion.

5          The second sign of collusion is whether the parties' agreement contains a "clear sailing"

6    agreement, which "is one where the party paying the fee agrees not to contest the amount to be

7    awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling."  *In re*

8    *Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,

9    458 (C.D. Cal. Jan. 17, 2014) (quotation marks and citation omitted).  A version of a clear sailing

10   agreement is present here: the Settlement Agreement provides that Defendant "will not challenge

11   any requested fees, costs, and expenses that do not exceed $40,000, and Class Counsel will not

12   seek more than $55,000 for attorneys' fees, costs, and expenses."  (Dkt. No. 49-1 ¶ 17.D.)  But

13   Defendant will pay the attorneys' fees, costs, and expenses "separate and apart from the

14   Settlement Fund, costs of Settlement Administration, and the payments to Plaintiffs."  (*Id.*)  Courts

15   consistently have found that clear sailing provisions do not signal collusion where the attorneys'

16   fees award does not involve a common fund apportioned between relief for the class and

17   attorneys' fees.  *See, e.g.*, *Roberts v. Electrolux Home Prods., Inc.*, No. SACV12-1644-

18   CAS(VBKx), 2014 WL 4568632, at *14 (C.D. Cal. Sept. 11, 2014) ("[T]he Court notes that this

19   Settlement does not involve a common fund apportioned between relief and fees—and the

20   attorneys' fee award will not reduce any benefits received by the Class.  Thus, any objection

21   regarding a so-called 'clear-sailing' provision is also overruled.") (citations omitted); *Eisen v.*

22   *Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 4390006, at *10 (C.D. Cal.

23   Jan. 30, 2014) ("The Settlement Agreement merely provides that [defendant] will not object to a

24   fee petition by plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000.

25   This type of provision is appropriate when, as here, it does not impact the substantive benefits

26   offered to the class."); *Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS, 2011 WL

27   1467356, at *2 (N.D. Cal. Apr. 12, 2011) (noting that where no common fund exists, no

28   adversarial relationship exists between class counsel and the class concerning fees).  So it is here.

1    Thus, the clear sailing provision, though a *Bluetooth* warning sign, does not signal collusion under

2    the circumstances presented here.

3         The third warning sign—whether the parties have arranged for fees not awarded to the

4    class to revert to defendants rather than be added to the Settlement Fund, *see Bluetooth*, 654 F.3d

5    at 948—is not present here, where the non-reversionary Settlement Agreement provides that any

6    remaining funds be distributed to Bay Area Legal Aid.  *See infra*, Subsection e, Cy Pres

7    Distribution.

8         Despite the existence of two of the three *Bluetooth* factors, the Settlement Agreement does

9    not appear to be the result of, nor influenced by, collusion.  At least for the purposes of

10   preliminary approval, the Settlement Agreement appears to satisfy the Class Members' claims.

11   Class Members, most of whom are otherwise unaware of their FDCPA claim, stand to receive $10

12   for having received Defendant's debt collection letter.  Moreover, the injunctive relief provided

13   for in the Settlement Agreement ensures that no more consumers will receive Defendant's letter in

14   the future.  Thus, the three *Bluetooth* factors for the Court to consider at this stage of the approval

15   process do not represent a sign of collusion.

16        In short, though two of the three *Bluetooth* red flags are present, they do not appear to be

17   signs of collusion under the circumstances presented here.  Provided that counsel can address the

18   other matters discussed in this section by amending the Settlement Agreement, the Court should

19   grant preliminary approval.

20                    c.    *Lack of Preferential Treatment*

21        Under this factor, "the Court examines whether the Settlement [Agreement] provides

22   preferential treatment to any class member."  *Villegas*, 2012 WL 5878390, at *7.  Here, each

23   proposed class member stands to receive $10 based on their receipt of Defendant's debt collection

24   letter.  Plaintiffs also stand to receive payments of $1,000 each pursuant 15 U.S.C.

25   § 1692k(a)(2)(B)(i), which provides for an additional recovery for each named plaintiff of up to

26   $1,000 per plaintiff.  Besides their additional statutory payments, the Settlement Agreement does

27   not provide that either named Plaintiff will receive an incentive award or any additional payment

28   in exchange for their release of claims against Defendant.  While the $1,000 additional statutory

United States District Court
Northern District of California

17

1    payment to each named Plaintiff might have otherwise reduced the per-Class-Member recovery,

2    the inclusion of additional fees for named Plaintiffs in the FDCPA suggests that such awards are

3    proper, and the absence of an incentive award supports this conclusion.  Accordingly, the Court is

4    satisfied that there is no preferential treatment for the named Plaintiffs that rises to the level of

5    jeopardizing the fairness and reasonableness of the Settlement Agreement.

6                           d.      *Range of Possible Approval*

7            To determine whether a settlement "falls within the range of possible approval," courts

8    focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced

9    against the value of the settlement offer."  *Tableware*, 484 F. Supp. 2d at 1080.  Here, each Class

10   Member will receive $10 in damages for the FDCPA violation.  The FDCPA limits the recovery

11   for Class Members to the lesser of $500,000 or one percent of the defendant's net worth.  15

12   U.S.C. § 1692k(a)(2)(B)(ii).  "Net worth" for the purposes of the FDCPA means balance sheet net

13   worth, not fair market net worth including goodwill.  *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th

14   Cir. 2000) (cited with approval by *Gonzales*, 660 F.3d at 1068).  Defendant has submitted the

15   declaration of Matthew Kumar, its president and sole shareholder, who avers that the proposed

16   Settlement Fund exceeds one percent of Defendant's net worth.  (Dkt. No. 49-2 ¶ 2.)  Thus, the

17   Settlement Fund represents more monetary relief to each Class Member than the FDPCA itself

18   would allow, which suggests that the Settlement Agreement is fair and reasonable.[4]

19           In addition to the per-Class Member recovery apparently exceeding the statutory

20   maximum, Plaintiffs contend that the $10 that each Class Member stands to recover compares

21   favorably with other FDCPA cases, citing FDCPA class actions from around the country where

22   the per-class member recovery ranged between $1.24 and $15.  (*See* Dkt. No. 44 at 20-21

23   (citations omitted); Dkt. No. 47 ¶¶ 2-4.)  None of the cases Plaintiffs cite were from the Ninth

24   _____

25   [4] The Settlement Agreement provides that the Settlement Fund may be reduced if the total number
     of Class Members is less than the 1,361 currently anticipated as each Class Member stands to
26   receive exactly $10.00.  (*See* Dkt. No. 49-1 ¶ 17.A.)  If there are fewer Class Members and the
     Settlement Fund is reduced, Defendant will need to submit another declaration informing the
27   Court whether the adjusted total Settlement Fund still exceeds one percent of Defendant's net
     worth.  However, as the Court is satisfied that the Settlement Fund does so given the Class
28   Members now anticipated, the Settlement Fund appears to be fair and reasonable for the purposes
     of Preliminary Approval.

United States District Court
Northern District of California

Circuit, and the amount compares less favorably with recoveries here.  *See, e.g.*, *Durham v. Continental Cent. Credit, Inc.*, No. 07cv1763 BTM (WMc), 2011 WL 2173769, at *2 (S.D. Cal. June 2, 2011) (approving a $17,750 settlement fund for 97 class members, totaling $186 per class member); *Holman v. Experian Fabiani v. Oreck Corp.*, No. C 05-2140 JSW, 2006 WL 1390458, at *1-2 (N.D. Cal. May 19, 2006) & Dkt. No. 51 (approving a $45,000 settlement fund for 195 class members, totaling $230 per class member).  However, because the statutory limit on recovery varies by the defendant's net worth, the higher recovery in other actions does not mean the recovery is inadequate here, where Plaintiffs' potential recovery is limited by Defendant's more modest net worth.

In short, because Defendant's net worth limits the scope of the Class Members' possible recovery, and the Settlement Fund provides for recovery exceeding that limit, the value of the settlement offer exceeds the value of potential recovery in proceeding with litigation.  This is particular true given that proceeding with litigation comes with its own costs, including the costs of briefing a motion for class certification, motions for summary judgment, and potentially trial.

      e.   *Cy Pres Distribution*

A *cy pres* award must qualify as "the next best distribution" to giving the funds directly to class members.  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  As a result, "[n]ot just any worthy recipient can qualify as an appropriate *cy pres* beneficiary."  *Id.*  The Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries."  *Id.* (citation omitted).  A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]"  *Id.* (internal quotation marks and citations omitted).

Here, the *cy pres* distribution, which consists of the amount of any uncashed settlement checks issued to Class Members, is to Bay Area Legal Aid.  (Dkt. No. 49-1 ¶ 17.A.)  This organization provides services to low-income Bay Area residents, including among other things, consumer law and debtor's rights assistance.[5]  Accordingly, the Court is satisfied that the chosen

---

[5] *See* Bay Area Legal Aid, What We Do, https://www.baylegal.org/what-we-do/ (last visited Jan. 19, 2016).

United States District Court
Northern District of California

*cy pres* recipient has a close enough nexus to the plaintiff class here.

\* \* \*

In consideration of these factors, the Court concludes that the proposed Settlement Agreement is fair, adequate, and reasonable and in the best interest of the Class Members given the uncertainty of continued litigation.

**C.      Proposed Class Notice**

Affected natural persons are entitled to due process, so they must be given notice of the proposed settlement and their rights, including the right to exclude themselves and the opportunity to be heard.  *Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill.*, 361 F.3d at 575 (internal quotations omitted).

Here, Plaintiff submitted a 6-page Notice, which adequately informs each Class Member that he or she stands to receive $10 by participating in the Class, and participation will be deemed unless the Class Member opts out.  The Notice indicates that all relevant pleadings in the case will be available online at Class Counsel's website.  (Dkt. No. 44-1 at 31.)  The Settlement Agreement

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1    provides that Defendant is to provide a list of Class Members to the Claims Administrator, which

2    will disseminate notice via U.S. mail within 60 days of Preliminary Approval.  *See Chao v.*

3    *Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5,

4    2014) (noting that service by mail has been found to be "clearly adequate") (citation omitted).

5    Similarly, the Notice explains that Class Members need not take any action to receive a monetary

6    recovery (and, relatedly, to waive their related claims against Defendant), a procedure which is

7    often approved.  *See, e.g.*, *id.*  Nevertheless, this memo identifies three minor deficiencies in the

8    Notice.

9          The Notice Plan itself is likewise adequate.  *See supra* Settlement Proposal, Section F.

10   Plaintiffs' motion for final approval and motion for attorneys' fees are due 30 days before the

11   deadline to object to the Settlement Agreement.  (*See* Dkt. No. 49-1 ¶¶ 12, 17.D.)  Thus, Class

12   Members have sufficient time to object to the fee motion in advance of the Final Approval

13   hearing.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010)

14   (requiring the "court to set the deadline for objections to counsel's fee request on a date after the

15   motion and documents supporting it have been filed").

16         In addition, Class Counsel will keep "relevant pleadings" on its website for Class Members

17   to review.  (Dkt. No. 49-1 at 32.)  The Notice does not specify what documents will be made

18   available online.  At a minimum, however, Class Counsel should ensure that the website has a

19   complete copy of the Settlement Agreement, the Notice, the Motion for Preliminary Approval, the

20   Court's eventual Order granting Preliminary Approval, Class Counsel's Motion for Attorneys'

21   Fees and Costs, and the Motion for Final Approval of the Class Action Settlement.

22                                          **CONCLUSION**

23         The Court preliminarily finds that the proposed Settlement Class meets the requisite

24   certification standards and GRANTS conditional certification of the Class for settlement purposes.

25   The proffered Settlement Agreement, as amended by the parties' revised Settlement Agreement

26   and Class Notice filed January 19, 2016 (Dkt. No. 49-1), meets the requisite requirements for fair,

27   adequate, and reasonable settlement at this juncture of the settlement process.

28         The Court finds further oral argument unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and

VACATES the hearing previously set for January 21, 2016.

For the reasons stated above, the Court therefore GRANTS the motion for preliminary approval of the class action settlement as follows:

1. Notice shall be provided in accordance with the Notice Plan and this Order—that is, by February 18, 2016.

2. Plaintiffs' counsel shall file a motion for final approval and motion for approval of attorneys' fees and costs by March 21, 2016.

3. Class Members shall submit their exclusion requests or objections by April 18, 2016.

4. Counsel shall return before this Court for a final fairness hearing, at which the Court shall finally determine whether the settlement is fair, reasonable, and adequate, on April 28, 2016 at 9:00 a.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California.

**IT IS SO ORDERED.**

Dated: January 20, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge