UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL SCHUCHARDT, et al.,

Plaintiffs,

v.

LAW OFFICE OF RORY W. CLARK,

Defendant.

Case No.  15-cv-01329-JSC

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**

Re: Dkt. Nos. 51, 52

Plaintiffs Daniel Schuchardt ("Schuchardt") and Michelle Muggli ("Muggli," and together, "Plaintiffs") bring this pre-certification class action on behalf of themselves and a putative class of consumers against Defendant Law Office of Rory Clark, A Professional Law Corporation ("Defendant"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and corresponding sections of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, arising out of language in the initial debt collection letters that Defendant sent to Plaintiffs and the rest of the putative class.  Specifically, Plaintiffs contend that the initial communication notice misrepresented their rights by failing to notify them that certain statutory rights would be triggered only by the recipients' disputing the debt in writing, not just orally.  On January 20, 2016, the Court issued an Order granting Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement.  *Schuchardt v. Law Office of Rory W. Clark*, No. 15-cv-01329-JSC, 2016 WL 232435, at *1 (N.D. Cal. Jan. 20, 2016).

Now pending before the Court are Plaintiffs' unopposed motions for final approval of the class action settlement and for attorneys' fees and expenses.  (Dkt. Nos. 51, 52.)[1]  Defendant does

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

not oppose the motions.  There are no objections from any Class Members.  The Court held a fairness hearing regarding final approval and fees on April 28, 2016.  Having considered the arguments of counsel and the papers submitted, the Court GRANTS final approval of the Settlement Agreement and GRANTS the requested attorneys' fees and costs.

## BACKGROUND

**A. Factual Background**

The following undisputed facts are based on the parties' recitation of the undisputed facts described in their briefing on Defendant's motion for summary judgment.

Defendant is a law firm that engages in debt collection on behalf of its clients, including Bank of America, N.A. ("Bank of America").  Plaintiffs, who are consumers within the meaning of the FDCPA, incurred debt to Bank of America.  When Plaintiffs' debts became delinquent, Bank of America referred them to Defendant to initiate debt collection.  Defendant then mailed letters with the following language to Plaintiffs:

> If you notify this firm within thirty (30) days after your receipt of this letter, that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you. Upon your written request within the same thirty-day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after your receipt of this letter, we will assume that the debt is valid.

(Dkt. Nos. 1-1, 1-2.)  Neither Plaintiff contacted Defendant, either orally or in writing, to lodge a dispute about the debt, request a validation, or otherwise seek more information about the debt within 30 days of receipt of the debt collection letter.

**B. Procedural History**

Plaintiffs filed the instant class action complaint on March 23, 2015 under Section 1692g(a)(4) of the FDCPA and Section 1788.17 of the Rosenthal Act, alleging that the statement misrepresented the rights of consumers by failing to inform Plaintiffs that their dispute of debt must be in writing.  (Dkt. No. 1.)  Defendant answered soon after, and the parties commenced limited discovery.  At the case management conference on July 16, 2015, they agreed to stay discovery and class certification briefing until after resolution of a discrete, dispositive legal issue:

whether the language in the letter is misleading insofar as it misrepresents Plaintiffs' statutory rights to request a debt validation.  In accordance with that discussion, the parties fully briefed Defendant's motion for summary judgment (Dkt. Nos. 30-32), but prior to the hearing the parties submitted a joint notice of class action settlement.  (Dkt. No. 34.)  Following a hearing, Plaintiffs filed a revised settlement agreement and class notice and submitted an additional declaration in support thereof. [2]  The Court granted the parties' motion for preliminary approval of the Settlement Agreement on January 20, 2016.  *Schuchardt*, 2016 WL 232435, at *1.

In accordance with the Order granting preliminary approval, Plaintiffs filed a motion for final approval and a motion for attorneys' fees and reimbursement of expenses on March 21, 2016. (Dkt. Nos. 51, 52.)  On February 18, 2016, the claims administrator mailed Notice of the proposed Settlement Agreement to the putative class via U.S. Mail.  (Dkt. Nos. 51 at 15, 51-1 at 1.)  By the date of the final fairness hearing, there were no objections and 29 exclusions.  (Dkt. No. 57 ¶ 5; Dkt. No. 57-1 ¶¶ 15-16/.)

## SETTLEMENT TERMS[3]

At some point after the complaint was filed, the parties engaged in settlement discussions. At that time, the action had been pending for six months, and the parties had engaged in only limited discovery before the Court stayed all discovery and the parties' deadline to complete Early Neutral Evaluation.  (Dkt. Nos. 26, 29.)  There is no information before the Court about the scope of the parties' negotiations or whether a neutral third party participated.  The parties ultimately agreed to the Settlement Agreement before the Court. (Dkt. No. 44-1.)  The key provisions are as follows.

The Settlement Class is defined as:

> All persons with a California address to whom Law Office of Rory W. Clark, A Professional Law Corporation mailed an initial debt collection communication that stated: "If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any

---

[2] In this Order, the revised settlement agreement and revised class notice submitted after the preliminary approval hearing are referenced as the Settlement Agreement and Class Notice, respectively.

[3] A more thorough description of the background of this case, the settlement negotiations, and the terms of the Settlement Agreement can be found in the Preliminary Approval Order, which the Court incorporates here in full.  *See Schuchardt*, 2016 WL 232435, at *1-4.

United States District Court
Northern District of California

> portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you," between June 1, 2014 and June 1, 2015, in connection with the collection of a consumer debt.

(Dkt. No. 49-1 ¶ 1.C.)  Excluded from the Class is any person already subject to an existing agreement regarding the debt collection communication, any person who is deceased, and any person who has filed for bankruptcy protection under Title 11 of the United States Code.  (*Id.*)

The Settlement Agreement provides for a total Settlement Fund of $13,610.  (*Id.* ¶ 17.A.)  The Settlement Agreement provides for adjustment of that total Settlement Fund amount if the parties discover there are additional or fewer Class Members such that the Settlement Fund consists of a flat $10.00 distribution per Class Member (*id.*), and at the preliminary approval hearing, Class Counsel confirmed that the intent of the Settlement Agreement was for each Class Member to receive $10.00, *not* a *pro rata* share of a total fixed Settlement Fund.  Since the Preliminary Approval Order, the parties have discovered that there are only 930 Class Members.  (Dkt. No. 56 ¶ 2.)  Instead of decreasing the amount of the Settlement Fund to account for a flat $10.00 distribution to each of the 930 Class Members as they previously intended, the parties instead agreed to keep the Settlement Fund of $13,610 intact to be distributed *pro rata* to all participating Class Members.  (*Id.* ¶ 3.)  Thus, each Class Member will receive even more than the Settlement Agreement initially provided.

The Settlement Agreement also provides that Defendant will pay $1,000.00 to each named Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i).  (Dkt. No. 49-1 ¶ 17.B.)  In addition, the Settlement Agreement provides that Defendant will pay Class Counsel's attorneys' fees, costs, and expenses, as well as the costs of settlement administration.  (*Id.* ¶¶ 17.D, E.)  With respect to those fees, the Settlement Agreement provides that Class Counsel will not seek more than $55,000 and Defendant will not challenge any requested fees, costs, and expenses up to $40,000.  (*Id.* ¶ 17.D.)

For costs associated with settlement administration, the Settlement Agreement itself does not set a maximum amount, nor does the Notice include any estimate of administration costs.  (*Id.* ¶ 17.E.)  The Settlement Agreement also includes a non-monetary term of relief: Defendant will no longer use the language at issue in this case in its initial debt collection letters.  (*Id.* ¶ 17.C.)

To the extent that any funds remain in the Settlement Fund—that is, uncashed checks sent to Class Members—the amount will be paid to Bay Area Legal Aid as a *cy pres* recipient.  (*Id.* ¶ 17.A.)  Therefore, none of the Settlement Fund will revert to Defendant.

In exchange for participation, Class Members agree to release all claims against Defendant that arise out of the language at issue in the debt collection letters that Defendant sent.  (*Id.* ¶ 1.D.)

## DISCUSSION

Judicial policy strongly favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Id.* In the first stage of the process, the court preliminarily approves the settlement pending a final fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.  *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).  "At the [final] fairness hearing . . . after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014) (*citing Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).  Following the final fairness hearing, the Court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See id.*; *Nat'l Rural Telecomm'cns Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523, 535 (C.D. Cal. 2004).

## I.      Final Approval of the Settlement Agreement

### A.      Final Class Certification of the Settlement Class

#### 1. *Rule 23(a) Requirements*

Class actions must meet the following requirements prior to certification:

> 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are known as numerosity, commonality, typicality, and adequacy of representation, respectively.  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  The Court must determine that Lead Plaintiff has satisfied his burden to demonstrate that the proposed class satisfies each element of Rule 23.  These requirements "demand undiluted, even heightened, attention in the settlement context . . . for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citations and footnote omitted).

The Court previously found the putative class satisfied the requirements for numerosity, commonality, typicality, and adequacy of representation under Rule 23(a).  *Schuchardt*, 2016 WL 232435, at *6.  The Court is unaware of any changes that would alter its analysis as to commonality, typicality, and adequacy of representation.

However, some new facts have arisen regarding numerosity that merit comment.  The Court's Order granting preliminary approval of the Settlement Agreement found the putative class sufficiently numerous based on the parties' representation that there were 1,361 Class Members.  *Schuchardt*, 2016 WL 232435, at *4-6.  Plaintiffs now represent that the Class numbers 930 members, which is smaller than anticipated at the preliminary approval stage.  (*Compare* Dkt. No. 49-2 ¶ 2 (stating that 1,361 Class Members exist), *with* Dkt. No. 52-1 at 5 n.1 & Dkt. No. 56 ¶ 2 (stating that 930 Class Members exist).)  But Plaintiffs have explained this discrepancy: since the Preliminary Approval Order, Defendant determined that 1,361 separate *accounts* existed, not 1,361 unique Class Members, because some Class Members had multiple accounts with Defendant and therefore received multiple allegedly violative letters.  (*Id*. at 5.)  However, the reduction in Class Members does not affect Plaintiffs' ability to satisfy the numerosity requirement, as even 930 Class Members is sufficiently numerous to satisfy Rule 23(a).  *See Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) ("A plaintiff need not state the exact number of class members, and there is no threshold number above which impracticability is presumed.") (citing *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 488 (N.D. Cal. 2011)).  Thus, all four of Rule 23(a)'s requirements are met.

United States District Court
Northern District of California

6

2.      *Rule 23(b) Requirements*

A potential class must also meet one of the conditions outlined in Rule 23(b)—of relevance here, the condition that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In evaluating the proposed class, "pertinent" matters include:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

*Id.*

Again, the Court previously found that both prerequisites of Rule 23(b)(3) were satisfied. *Schuchardt*, 2016 WL 232435, at *6-7.  The Court is unaware of any changes that would alter its analysis.  Thus, the Settlement Agreement meets the Rule 23(b) requirements.

3.      *Rule 23(c)(2) Notice Requirements*

Finally, if the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice. *See Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citation omitted).  The notice must be "reasonably certain to inform the absent members of the plaintiff class," but Rule 23 does not require actual notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

As the Settlement Agreement provides, the Court-appointed class administrator, Kurtzman Carson Consultants, LLC ("Kurtzman"), sent the Notice via U.S. Mail to 930 Class Members, including the named Plaintiffs.  (Dkt. No. 51 at 7; Dkt. No. 57-1 ¶ 2; *see also* Dkt. No. 49-1 ¶ 6 (establishing Kurtzman as settlement administrator); *id.* ¶ 7 (setting forth notice requirements and procedures).)  The U.S. Postal Service returned a number of Notices and provided forwarding

addresses for some.  (Dkt. No. 57-1 ¶ 11.)  For others, Kurtzman conducted an address search using credit and other public source databases to locate new addresses.  (*Id.* ¶ 12.)  Kurtzman resent those Notice Packets to Class Members.  (Dkt. No. 57-1 ¶ 11.)  Some were returned again. Ultimately, Kurtzman sent 18 of those notices to "bad addresses": one Notice was mailed, returned, re-mailed after Kurtzman, then returned again by the U.S. Postal Service; 17 Notices were mailed and returned and Kurtzman was unable to find a new address for the recipient after despite searching.  (Dkt. No. 57-1 ¶¶ 12-14.)  Under the circumstances presented, the Court is satisfied that this system of providing notice was reasonably calculated to provide notice to Settlement Class Members and was the best form of notice available under the circumstances.

Likewise, the content of the Notice is sufficient: it clearly identifies the options available to the putative class.  (*See* Dkt. No. 49-1 at 27.)  Class Members have the option to: do nothing and stay in the Settlement Agreement; ask to be excluded from the Settlement Agreement; or object to the terms of the Settlement Agreement.  (*Id.*)  The Notice also thoroughly explains the nature and mechanics of settlement.  (*Id.* at 28-32.)  The content of the Notice is therefore sufficient to satisfy Rule 23(c)(2)(B).  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted).

\* \* \*

Because the Settlement Class satisfies Rules 23(a) and 23(b)(3), and Notice was sufficient in accordance with Rule 23(c), the Court will grant final class certification.

B.      Approval of the Settlement Agreement

Having determined that class treatment is warranted, the Court now addresses whether the terms of the parties' settlement appears fair, adequate, and reasonable under Rule 23(e).  In making this determination, a court typically considers the following factors initially set forth in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004): "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and

views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

members of the proposed settlement." *Id.* at 575.  The court need not consider all of these factors,

or may consider others.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

2011) ("The factors in a court's fairness assessment will naturally vary from case to case[.]").

But in *Bluetooth*, the Ninth Circuit explained that when "a settlement agreement is

negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is"

insufficient.  *Id.* at 946 (emphasis in original).  In these cases, courts must show not only a

comprehensive analysis of the above factors, but also that the settlement did not result from

collusion among the parties.  *Id.* at 947.  Because collusion "may not always be evident on the face

of settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for

more subtle signs that class counsel have allowed pursuit of their own self-interests and that of

certain class members to infect the negotiations."  *Id.*  The court identified three such signs:

> (1) when class counsel receives a disproportionate distribution of the
> settlement, or when the class receives no monetary distribution but
> counsel is amply awarded[;]
>
> (2) when the parties negotiate a "clear sailing" arrangement
> providing for the payment of attorneys' fees separate and apart from
> class funds without objection by the defendant which carries the
> potential of enabling a defendant to pay class counsel excessive fees
> and costs in exchange for counsel accepting an unfair settlement on
> behalf of the class[;] and
>
> (3) when the parties arrange for fees not awarded to revert to
> defendants rather than to be added to the class fund.

*Id.* (internal quotation marks and citations omitted).  For the reasons stated below, on balance a

review of these factors indicates that this Settlement Agreement is fair, adequate, and reasonable.

       1.    *The* Churchill *Factors*
           a. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
           Likely Duration of Further Litigation

The first relevant factor is the risk of continuing litigation, including the strengths and

weaknesses of Plaintiffs' case on the merits, balanced against the certainty and immediacy of

recovery from the Settlement Agreement.  *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec.

Litig.*), 213 F.3d 454, 458 (9th Cir. 2000); *Rieckborn v. Velti PLC*, No. 13-cv-3889-WHO, 2015

WL 468329, at *4 (N.D. Cal. Feb. 3, 2015) (citations omitted).  Although this action reached

settlement before the Court had occasion to consider the claims' merits, the Court need not reach

an ultimate conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Rather, the court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez*, 563 F.3d at 965 (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526 (quotation marks and citation omitted).

Here, Plaintiffs filed a class action complaint under Section 1692g(a)(4) of the FDCPA and Section 1788.17 of the Rosenthal Act, alleging that a statement included in the debt collection letters addressing the recipient's ability to dispute the debt in writing, not just orally, misrepresented consumers' rights by failing to inform Plaintiffs that they must dispute their debt in writing to obtain a statutory right to verification. (Dkt. No. 1.) Although Defendant maintains that the language at issue did not violate the FDCPA, Defendant has confirmed, in writing, that it has changed the language of its form collection letter to address Plaintiffs' concerns. (Dkt. No. 51 at 7.)

Plaintiffs maintain that a risk in continued litigation remains because Defendant made various arguments and raised policy considerations to oppose Plaintiffs' claims. (*Id*. at 11.) Although Plaintiffs did not address these specific issues in their motion for final approval, Plaintiffs' brief in opposition to Defendant's motion for summary judgment identifies factual disputes that would need to be developed in the record prior to entry of judgment, including: the frequency with which debtors have telephoned Defendant to dispute a debt; the frequency with

United States District Court
Northern District of California

which Defendant has provided written verification of a debt to a debtor who disputed his or her debt orally; the means and frequency by which Defendant has trained its employees regarding the proffered Standard Operating Procedures ("SOPs"); the means and frequency by which Defendant ensures that its employees strictly follow the proffered SOPs, particularly with regard to oral debt disputes; the penalties that Defendant imposes, if any, for failing to comply with the proffered SOPs; Defendant's quality control efforts with regard to employees' SOP compliance, if any; whether and to what extent, upon receiving an oral debt dispute, Defendant immediately ceases all collection activities on that debtor's account; the means by which Defendant ensures that collections activities remain suspended until debt verification has been provided; whether any of Defendant's employees has ever violated the proffered SOPs, and the details of these violations; Defendant's policies and procedures upon learning that a debtor disputed his or her debt orally and was subsequently treated differently than a debtor who disputes his or her debt in writing; and what recourse, if any, does the debtor have against Defendant should Defendant fail to honor its word or follow its own SOPs.  (Dkt. No. 31-1 ¶ 12.)  In addition, Plaintiffs represent that they would need to depose Defendant and its compliance manager.  (*Id.* ¶ 13.)

Moreover, Defendant's motion for summary judgment on the dispositive issue in the case—whether the language in the letter is misleading insofar as it misrepresents Plaintiffs' statutory rights to request a debt validation—presents another hurdle present in litigation.  The Court never ruled on this issue, and a ruling for plaintiff is not a certainty.  Thus, if the parties were to continue with litigation, they would have to address all of the above issues, and as noted in the Preliminary Approval Order, further briefing and litigation would include the costs of a motion for class certification and potentially trial.  *Schuchardt*, 2016 WL 232435, at *11.

As to the potential monetary risks, the FDCPA limits the recovery for Class Members to the lesser of $500,000 or one percent of the defendant's net worth.  15 U.S.C. § 1692k(a)(2)(B)(ii).  "Net worth" for the purposes of the FDCPA means balance sheet net worth, not fair market net worth including goodwill.  *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) (cited with approval by *Gonzales v. Arrow Fin. Servs.*, 660 F.3d 1055, 1068 (9th Cir. 2011)).  Here, Defendant has submitted a declaration averring that the proposed Settlement Fund

11

United States District Court
Northern District of California

exceeds one percent of Defendant's net worth.[4]  (Dkt. No. 49-2 ¶ 2.)  Thus, the Settlement Fund represents more monetary relief for each Class Member than the FDCPA itself would allow, and therefore represents a recovery in excess of what Plaintiffs would have received had they proceeded with trial.  (*See also* discussion I.B.c.)

Further, Plaintiffs acknowledge that Defendant's conduct may not have been intentional.  (Dkt. No. 51 at 12.)  The FDCPA provides for an award up to certain amounts depending on a number of factors, including the nature of the debt collector's noncompliance.  (*Id.*)  Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class.

In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.  Specifically, each Class Member will receive approximately $15.10.  (*See* Dkt. No. 56 ¶ 6.)  This is over $5.00 more than what was originally outlined in the Settlement Agreement, which further supports the Settlement Agreement's value to the Class.  (*See* Dkt. No. 49-1 ¶ 17.A.)  The settlement administrator must also make disbursements to the entire Class within 15 days of the Court's final approval order.  (*Id.*)  Although Plaintiffs might ultimately prevail on the merits of the case following continued litigation, the Settlement Agreement provides the benefit of sooner and certain recovery in excess of what Plaintiffs would have received following trial because of the FDCPA's cap on monetary relief.  (Dkt. No. 51 at 13.)  This factor therefore weighs in favor of approval.

### b. Risk of Maintaining Class Action Status Throughout Trial

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  There does not appear to be any issue with maintaining class certification here; indeed, courts regularly certify FDCPA class actions.  *See, e.g.*, *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511-12 (N.D. Cal. 2007); *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005).  This result seems likely here, where all of the Class Members received the same collection letters regarding their Bank of America debts.  (Dkt. Nos. 1-1, 1-2.)

---

[4] Defendant submitted this declaration in connection with the preliminary approval motion.  (Dkt. No. 49-2.)  The parties have not submitted any evidence that suggests that Defendant's value has changed since that time.

However, if this case had not settled, Defendant may have opposed Plaintiffs' motion for class certification, and even if the Class was certified, the Court could still re-evaluate the appropriateness of class certification at any point. Fed. R. Civ. P. 23(c)(1)(c); *see, e.g.*, *Catala v. Resurgent Capital Servs. L.P.*, No. 08cv2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) (FDCPA case finding this factor favored settlement even though all putative class members received the same or similar letter). Thus, this factor also favors settlement.

c. Amount Offered in Settlement

The fourth fairness factor, the amount of recovery offered, also favors final approval of the Settlement Agreement. This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted).

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

The parties agreed that Defendant will establish a Settlement Fund in the amount of $13,610. (Dkt. No. 49-1 ¶ 17.D.) The Court found this amount reasonable when the parties represented that there were 1,361 Class Members, and that each Class Member would receive at least $10.00. *See Schuchardt*, 2016 WL 232435, at *10-11. Now, with 930 Class Members and 29 exclusions, the 901 participating Class Members will each receive a *pro rata* distribution of the $13,610 Settlement Fund resulting in a payment of approximately $15.10. (*See* Dkt. No. 56 ¶ 6.) Thus, the amount fares even better for Class Members than it did at the preliminary approval

13

United States District Court
Northern District of California

stage.  And as before, the Settlement Fund still represents more monetary relief to each Class Member than the FDCPA itself would allow because the Settlement Fund exceeds one percent of Defendant's net worth.  *See* 15 U.S.C. § 1692k(a)(2)(B)(ii) (stating that the FDCPA limits recover for class members to the lesser of $500,000 or one percent of the defendant's net worth).  (*See also* Dkt. No. 49-2 ¶ 2 (stating that the Settlement Fund of approximately $13,610.00 exceeds 1 percent of Defendant's net worth "at any time during the pendency of this action, as well as the present.").)

Notably, the per-Class Member recovery is lower than other FDCPA cases in the Ninth Circuit.  *See, e.g.*, *Durham v. Continental Cent. Credit, Inc.*, No. 07cv1763 BTM (WMc), 2011 WL 2173769, at *2 (S.D. Cal. June 2, 2011) (approving a $17,750 settlement fund for 97 class members, totaling $186 per class member); *Fabiani v. Oreck Corp.*, No. C 05-2140 JSW, 2006 WL 1390458, at *1-2 (N.D. Cal. May 19, 2006) (approving a $45,000 settlement fund for 195 class members, totaling $230 per class member).  However, because the statutory limit on recovery varies by the defendant's net worth, the higher recovery in other actions does not mean the recovery is inadequate here, where Plaintiffs' potential recovery is limited by Defendant's more modest net worth.

Moreover, as noted previously and in the Preliminary Approval Order, proceeding with litigation comes with its own additional costs, such as the costs of briefing a motion for class certification, motions for summary judgment, and potentially trial.  *Schuchardt*, 2016 WL 232435, at *11.

In sum, Defendant's net worth limits the scope of recovery here, and the Settlement Fund provides for recovery that exceeds this scope.  Thus, even if the amount of per-Class Member recovery is less than the amount typically obtained in this District, because it exceeds the statutory maximum recovery, the amount offered in the Settlement Agreement favors final approval.

d. Extent of Discovery Completed & the Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table[.]"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quotation marks and citation omitted).  Rather, the court focuses on whether "the parties carefully

investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371 (citation omitted).

The extent of discovery completed and stage of the proceeding also supports the Settlement Agreement.  The parties only engaged in limited, informal discovery before discovery was stayed.  (Dkt. No. 51 at 10.)  But they fully briefed Defendant's summary judgment motion on the dispositive issue in this case—whether the language of Defendant's collection letters violated the FDCPA—but settled before the Court held oral argument or ruled on the motion.  (Dkt. Nos. 30-32.)  This briefing allowed the parties to gain an understanding of their respective positions on the primary legal issue before reaching settlement, and thus both parties had "a clear view of the strengths and weaknesses of their cases." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) (quotation marks and citation omitted). Therefore, the procedural posture of this case favors approval of the Settlement Agreement.  *See Catala*, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) (FDCPA case finding this factor weighed in favor of approval where the parties had conducted some discovery to determine which defendant was a debt collector and one of the defendant's net worth).

### e. Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the Settlement Agreement.  Class Counsel has extensive experience litigating consumer protection class actions, including class actions brought under the FDCPA.  (*See* Dkt. No. 52-1.)  Both Plaintiffs and Class Counsel believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Class.  (Dkt. No. 51 at 11.)  Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.  *See Hanlon*, 150 F.3d at 1026; *Rodriguez v. West Pub. Corp.*, No. CV05–3222 R(MCx), 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### f. Presence of a Government Participant

No government entity is a party to this action.  In the complaint, Plaintiffs did not assert jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  (*See* Dkt. No. 1.)  Nevertheless, Plaintiffs argue that this factor weighs in favor of approval of the Settlement

Agreement because they sent CAFA notice to the United States Attorney General as well as the Attorneys General for 14 states, and as of the day before the final approval hearing, no state or federal official has raised any objection or concern regarding the Settlement Agreement.  (*See* Dkt. No. 51 at 15; *see also* Dkt. No. 57-1 ¶¶ 5-6; Dkt. No. 57-1 at 13.)  At the final approval hearing, counsel represented that there had been no changes that would alter the Court's analysis, which is confirmation that no government official objected.

"Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832, at *14.  In *Holman v. Experian Information Solutions, Inc.*, No. 11–cv–0180 CW (DMR), 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014), the court noted that although a governmental entity was not a party to the action and the plaintiffs likewise did not invoke CAFA jurisdiction in the operative complaint, the plaintiffs nevertheless notified Attorneys General for all 50 states and the U.S. Attorney General pursuant to CAFA.  *See id.*; *see also* First Amended Class Action Complaint, *Holman v. Experian Info. Solutions, Inc.*, No. 11-cv-0180 CW (DMR) (N.D. Cal. Oct. 5, 2011), Dkt. No. 59.  The *Holman* court implied that the lack of objections from state or federal officials favored settlement. *Id.* at *3. So too here.  While there is no governmental entity party to this action, neither state nor federal officials lodged any objection after receiving notice of the Settlement Agreement.  Thus, this factor favors the Settlement Agreement.

g. Reaction of the Class Members

The number of class members who object to a proposed settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted).  Put another way, a "court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks and citation

United States District Court
Northern District of California

omitted); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

The claims administrator mailed the Court-approved Notice via U.S. Mail to 930 Class Members.  (Dkt. No. 51 at 15.)  As discussed above, the claims administrator was unable to find good addresses for 18 Class Members—less than two percent of the Class—who therefore did not receive the Notice Packet.  (Dkt. No. 57-1 ¶ 14.)  Thus, the vast majority of Class Members properly received the Notice Packet, and as of the final fairness hearing, no Class Member has objected to it.  By any standard, the lack of objection of the Class Members favors approval of the Settlement.  *See, e.g.*, *Churchill Vill.*, 361 F.3d at 577 (affirming settlement with 45 objections out of 90,000 notices sent); *Rodriguez*, 2007 WL 2827379, at *10 (affirming settlement with 54 objections out of 376,000 notices).

In addition, by the day before the final fairness hearing there were only 29 requests for exclusions[5] (*see* Dkt. No. 56 ¶ 6), and counsel confirmed at the final fairness hearing that there had been no further exclusion requests.  The Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Garner*, 2010 WL 1687832, at *14 (internal quotation marks and citation omitted).  Twenty-nine exclusions represent 3 percent of the Class.  By any measure, this small number of exclusions representing a very small portion of the total shares at issue and the absence of objections further supports the Settlement Agreement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (noting that zero objections and 16 opt-outs representing 4.86 percent of the class "strongly supports settlement"); *Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *8 (W.D. Wash. 2001) (finding approval of class supported a finding of fairness where with 37,000 notices sent out there were 9 objections and less than 1% of the putative class opted out).  For each of these reasons, the reaction of the Class strongly supports final approval of the Settlement Agreement.

---

[5] The Class Administrator received 28 requests for exclusion from Class members, and one from a person who was not included on the Class list.  (Dkt. No. 57 ¶ 5; Dkt. No. 57-1 ¶ 15; *id.* at 16.) However, the parties are including the non-Class member in the number of opt-outs.  (Dkt. No. 57 ¶ 5.)

1

*2. The* Bluetooth *Factors*

2        Given that the parties reached this Settlement Agreement prior to class certification, the

3   Court must look beyond the *Churchill* factors and examine the settlement for evidence of

4   collusion with an even higher level of scrutiny.  *See Bluetooth*, 654 F.3d at 946.  The question here

5   is whether the Settlement Agreement was the result of good faith, arms-length negotiations or

6   fraud and collusion.  Two of the three warnings signs that the Ninth Circuit identified exist.

7   However, for the reasons described below, even if those warning signs exist, the Court finds no

8   evidence of collusion between the parties.  *See Bluetooth*, 654 F.3d at 950 (noting that upon

9   remand the district court may uphold the settlement notwithstanding the presence of all three of

10  the *Bluetooth* warning signs).

11       In the first *Bluetooth* factor, the Court compares the payout to the class (actual and

12  expected) to the unopposed claim of fees by class counsel.  *See Harris v. Vector Mktg. Corp.*, No.

13  C–08–5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011).  The total payout to the

14  Class is $13,610.  (Dkt. No. 49-1 ¶ 17.A; Dkt. No. 56 ¶ 3.)  Class Counsel's unopposed fees claim

15  is $52,500 (Dkt. No. 52 at 14)—just short of four times the Settlement Fund.  This ratio taken

16  alone may be sign of collusion.  *See Bluetooth*, 654 F.3d at 947.  However, here the attorneys' fees

17  and Class Members' recovery do not come from a common fund.  Thus, this *Bluetooth* warning

    sign, although perhaps initially a red flag, is not a sign of collusion.

18       The second warning sign—a "clear sailing" provision—is also present here.  A clear

19  sailing arrangement provides "for the payment of attorneys' fees separate and apart from class

20  funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and

21  costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]"  *Bluetooth*,

22  654 F.3d at 947 (internal quotation marks and citation omitted); *see also Weinberger v. Great N.*

23  *Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) ("[L]awyers might urge a class settlement at a

24  low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.").  So it is

25  here: the Settlement Agreement provides that Defendant will pay attorneys' fees, costs, and

26  expenses "separate and apart from the Settlement Fund, costs of Settlement Administration, and

27  payment to Plaintiffs."  (Dkt. No. 49-1 ¶ 17.D.)  Moreover, Class Counsel agrees not to challenge

    any fee and cost requests that do not exceed $40,000.  (*Id.*)  However, under the circumstances

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    presented here, the Settlement Agreement does not appear to be an example of Defendant agreeing

2    to pay Class Counsel excessive fees and costs in exchange for accepting an unfair settlement for

3    the Class.  Instead, as discussed above, the Settlement Fund is more than the Class Members could

4    have received had they continued to litigate this action, and as discussed below, the amount of fees

5    and costs is reasonable.  Thus, the clear sailing provision, though a *Bluetooth* warning sign, does

6    not signal collusion under the circumstances presented here.

7        The third warning sign—whether the parties have arranged for fees not awarded to the

8    class to revert to defendants rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at

9    948—is not present here, where the non-reversionary Settlement Agreement provides that any

10   remaining fees be distributed to Bay Area Legal Aid.  (Dkt. No. 49-1 ¶ 17.A.)

11       Notwithstanding the existence of two of the three *Bluetooth* factors, the Court concludes

12   that the Settlement Agreement did not result from, nor was influenced by, collusion because the

13   Settlement Agreement adequately satisfies the Class Members' claims.  Specifically, there are no

14   objections to the Settlement Agreement (Dkt. No. 51 at 15), and the Settlement Agreement

15   provides injunctive relief that ensures no more consumers will receive Defendant's letter in the

16   future.  As explained below, the amount of fees sought is reasonable.

                                           *   *   *

17       In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not

18   indicate collusion.  The Court is therefore satisfied that the Settlement was not the result of

19   collusion between the parties and instead is the product of arms-length negotiations between

20   experienced and professional counsel.  There are no objections to address.  For each of these

21   reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is

22   appropriate.

23   **II. Motion for Attorneys' Fees and Reimbursement of Expenses**

24       Next, the Court must determine whether the requested attorneys' fees and reimbursement

25   of expenses, the claims administrator costs, and the statutory awards to named Plaintiffs are fair

26   and reasonable.[6]  Class Counsel seeks an award of $52,500 in attorneys' fees, which is inclusive of

27   _____

28   [6] Though not part of Class Counsel's motion for attorneys' fees and reimbursement of expenses, the Court nonetheless reviews the reasonableness of the administration costs and statutory awards here.

19

expenses incurred.  For the reasons set forth below, the Court will award the full amount of attorneys' fee and expenses sought.

  A.  <u>Attorneys' Fee Award</u>

  When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941.

  Under the FDCPA, a successful plaintiff is entitled to receive reasonable attorneys' fees and costs as part of the damages from the liable debt collector.  15 U.S.C. § 1692k(a)(3); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory.").  Courts in the Ninth Circuit calculate an award of attorneys' fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Camacho*, 523 F.3d at 978 (internal citation and quotation marks omitted).  Although the lodestar figure is generally presumed to be a reasonable fee award, a district court "may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it."  *Id.* (internal citation and quotation marks omitted).  District courts have "a great deal of discretion in determining the reasonableness of the fee."  *Id.* (internal citation and quotation marks omitted).  "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."  *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (citation omitted).

  A party seeking attorneys' fees has the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community."  *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted).  Generally, "the relevant community is the forum in which the district court sits."  *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "affidavits of

United States District Court
Northern District of California

the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate

determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United*

*Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs do not request a percentage of recovery from the common fund, but instead seek

attorneys' fees and expenses separate from the Class Members' recovery. Therefore, the lodestar

method is the appropriate means of determining whether Class Counsel's fee request is reasonable.

*See Camacho*, 523 F.3d at 978 (internal citations omitted); *see, e.g.*, *Hunt v. Imperial Mercht.*

*Servs.*, No. C–05–04993 DMR, 2010 WL 3958726, at *3 (N.D. Cal. Oct. 7, 2010) (using the

lodestar method to determine reasonable attorneys' fees to successful plaintiffs in a FDCPA class

action settlement).

> 1. *Reasonable Rate*

"The first step in the lodestar analysis requires the court to determine a reasonable hourly

rate for the fee applicant's services. This determination involves examining the prevailing market

rates in the community charged for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D. Cal.

2012) (internal quotation marks and citation omitted); *see also Camacho*, 523 F.3d at 979. The

"relevant community" for the purposes of determining the reasonable hourly rate is the district in

which the lawsuit proceeds. *Barjon*, 132 F.3d at 500. "The fee applicant has the burden of

producing satisfactory evidence . . . that the requested rate is in line with those prevailing in the

community." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). In addition to

affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits

from other area attorneys or examples of rates awarded to counsel in previous cases. *See Cotton*,

889 F. Supp. 2d at 1167 (citation omitted). However, the actual rate that the fee applicant charged

is not evidence of the prevailing market rate. *Id.* (citing *Schwarz v. Sec'y of Health & Human*

*Servs.*, 73 F.3d 895, 898 (9th Cir. 1995)).

Class counsel seeks reimbursement of fees for work that four attorneys from Greenwald

Davidson Radbil PPLC (the "Firm") performed. (Dkt. No. 52 at 12-13.) The Firm has been

appointed class counsel in numerous class actions throughout the country, including FDCPA

cases. (*See* Dkt. No. 52-1 at 3-4 (collecting cases).) Lead counsel, Aaron D. Radbil, seeks

United States District Court
Northern District of California

United States District Court
Northern District of California

reimbursement at an hourly rate of $400 per hour.  (Dkt. No. 52 at 13.)  According to Class

Counsel, Mr. Radbil graduated from the University of Miami School of Law in 2006.  (Dkt. No.

52-1 ¶ 5.)  Mr. Radbil has also briefed and argued many issues of consumer interest.  (*Id*. ¶ 7.)

Class Counsel also cited two Ninth Circuit cases involving non-FDCPA consumer issues in which

Mr. Radbil served as counsel.  *See, e.g.*, *Stout v. FreeScore, LLC*, 743 F.3d 680 (9th Cir. 2014);

*Sorensen v. Credit Int'l Corp.*, 475 F. App'x 244 (9th Cir. 2012).

Michael L. Greenwald and James L. Davidson also seek reimbursement of fees at an

hourly rate of $400 per hour.  (Dkt. No. 52 at 13.)  Jesse S. Johnson, a senior associate at the firm,

seeks a reimbursement rate of $350 per hour.  (*Id.*)  Class Counsel's declaration does not provide

the education and practice areas of Messrs. Greenwald, Davidson, and Johnson.  But Class

Counsel contends that the requested rates for Messrs. Radbil, Greenwald, and Davidson are

reasonable because they collectively handled a FDCPA class action last year in which a court in

the Southern District of Florida awarded them $65,000 in attorneys' fees and expenses after

finding their hourly rate of $400 per hour reasonable.  *Gonzalez v. Dynamic Recovery Solutions,*

*LLC*, Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329, at *4 (S.D. Fla. Feb. 23, 2015).

Notably, the rate requested in *Gonzalez* is identical to the rates they now request.  (*See* Dkt. No.

52-1 ¶ 19.)

Class Counsel did not submit affidavits from other area attorneys attesting to local rates,

but they did cite cases in which courts in this District found similar rates appropriate in FDCPA

cases.  (*See* Dkt. No. 52 at 13 (collecting cases).)  *See, e.g.*, *Brown v. Mandarich Law Grp., LLP*,

No. 13–cv–04703–JSC, 2014 WL 1340211, at *2 (N.D. Cal. April 2, 2014) (finding a billing rate

of $350 to $450 per hour reasonable); *Rivera v. Portfolio Recovery Assocs.*, No. C 13–2322 MEJ,

LLC, 2013 WL 5311525, at *3 (N.D. Cal. Sept. 23, 2013) (finding a billing rate of $300 to $450

per hour reasonable).  Moreover, another case in this District that Plaintiffs did not cite also

supports their fee request.  *See, e.g.*, *Palmer v. Far West Collection Servs., Inc.*, No. C-04-03027

RMW, 2008 WL 5397140, at *1 (N.D. Cal. Dec. 18, 2008) (finding a billing rate of $325 to $465

per hour reasonable).  Given that Class Counsel has been appointed in numerous class actions,

including FDCPA cases; courts have awarded them exactly the same rates requested here in

previous cases; and courts in this District found similar rates appropriate in FDCPA cases, Class Counsel's requested rates are reasonable.

### 2. *Reasonable Hours*

As to the number of hours billed, they must equal the number of hours that can reasonably be billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Thus, the court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations[,]" and the court "necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

To date, Class Counsel has spent 210.9 hours litigating this case. (Dkt. No. 52 at 12.) In addition, Class Counsel estimates that Mr. Radbil will require an additional 30 hours to finalize the Settlement Agreement. (*Id.* at 14.) However, these additional hours are subsumed into the total requested $52,500 award, and Class Counsel will not request an increased amount of fees at or following the final fairness hearing. (*Id.*) Class Counsel spent these 210.9 hours conducting investigations, preparing a class action complaint, researching the claims and defenses, briefing the cross-motions for summary judgment, preparing motions and declarations, and conferring with the class administrator and Class Members. (*See id.* at 11-12.) Defendant has not challenged the reasonableness of any of the hours billed.

"Even if the opposing party has not objected to the time billed, the district court may not uncritically accept a fee request but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Cotton*, 889 F.Supp.2d at 1176 (internal citation and quotation marks omitted). Here, Class Counsel did not submit billing records to substantiate their hours, and instead submitted summaries of tasks they completed. (*See* Dkt. No. 52 at 11-12; *see also* Dkt. No. 52-1 at 6.) Though preferred, the Court may rely on summaries of hours worked, and contemporaneous billing records are unnecessary. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (concluding that the district court erred in denying a fee application on the grounds that the request was insufficiently documented where the moving party's counsel submitted a "summary compiled from time slips" that requested fees for

United States District Court
Northern District of California

"a broad category of tasks"); *see, e.g.*, *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *4 (N.D. Cal. Aug. 30, 2012) (in an FDCPA case, concluding that counsel's block-billing records "contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable"); *Palmer*, 2008 WL 5397140, at *1 (noting that plaintiffs' counsel "submitted itemized statements describing the time expended on the action and the services rendered[,]" which was sufficient for the court to assess whether a reasonable number of hours was spent). The declaration of Aaron Radbil includes a list of tasks completed and a total number of hours worked. (*See* Dkt. No. 52-1 ¶ 13.) To be sure, Mr. Radbil's declaration could have been more detailed: he could have provided estimates of the number of hours spent on each general task. However, under the circumstances presented— especially in light of the low total number of hours and that counsel did not bill for work done after the motion for final approval and is not separately requesting reimbursement of expenses— the number of hours Class Counsel worked on this matter, based on the total block billed amount and the tasks in which counsel engaged, could reasonably be billed to a private, hourly-fee client and thus are compensable. *Gonzalez*, 729 F.3d 1196, 1202.

> 3. *Lodestar Calculation*

Class Counsel therefore dedicated a combined total of 210.9 hours litigating this case, for which they accrued $76,725 in attorneys' fees based on their requested hourly rates. (Dkt. No. 52-1 ¶ 16.) After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier. *See Hopkins v. Stryker Sales Corp.*, No. 11–CV–02786–LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) (citation omitted). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Id.* (citation omitted). If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable. *Id.* In determining whether a multiplier is appropriate, courts consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the

1
        professional relationship with the client, and (12) awards in similar cases.

2   *Id.* (citations omitted).  Class Counsel does not assert that a lodestar multiplier should be applied

3   to increase their fees.  Instead, they assert that the fees sought are reasonable because they

4   represent a discount compared to the anticipated lodestar in this matter—in other words, a

5   negative multiplier.  (Dkt. No. 51 at 14.)

6           Specifically, while the lodestar is $76,725, Class Counsel have requested an award of

7   $52,500.  (Dkt. No. 52 at 14.)  This represents a significant reduction compared to Class Counsel's

8   lodestar number, and courts view self-reduced fees favorably.  *See, e.g.*, *Catala*, 2010 WL

9   2524158, at *8 (concluding that a self-reduction from the lodestar amount of $38,208.43 to

10  $35,000 supported finding that plaintiff's counsel's fee request was reasonable); *Guidiville*

11  *Rancheria of Cal. v. United States*, No. 12–cv–1326 YGR, 2015 WL 4934408, at *4 (N.D. Cal.

12  Aug. 18, 2015) (noting favorably that the defendant self-reduced its requested fees by eliminating

13  time entries).  Here, the request seems all the more reasonable given that it does not account for

14  the additional 30 hours of work that Mr. Radbil anticipated completing to finalize the Settlement

15  Agreement, or the work of Ryan Lee, who acted as local counsel for Plaintiffs and the Class.

16  (Dkt. No. 52 at 14 &n.6.)  Nor does it include the work done in response to the Court's Order for a

17  supplemental submission on the motion for final approval.  (*See* Dkt. Nos. 55, 56, 57.)

18          Further supporting the reasonableness of the request, Class Counsel's litigation expenses

19  are also subsumed within the $52,500 award requested.  (*Id.* at 15.)  Put another way, there is no

20  separate request for an award of litigation expenses.  Class Counsel asserts that, as of Mr. Radbil's

21  declaration on March 21, 2016, they incurred $763.80 in expenses, which includes a filing fee of

22  $400 for the complaint, an application fee of $305 for pro hac vice admission, and "other

23  expenses" of $58.80.[7]  (Dkt. No. 52-1 ¶ 23-24.)  Class Counsel also represents that an additional

24  $600 in fees will be incurred to finalize this Settlement Agreement.  (*Id.*)  Even including these

25  litigation expenses, the total requested fees award is less than the $55,000 ceiling set forth in the

26  Settlement Agreement (Dkt. No. 49-1 ¶ 17.D), which further suggests that it is reasonable.

                                 \*   \*   \*

27  ───────────────────

[7] Neither the fees motion nor Class Counsel's declaration provides an explanation of these "other
28  expenses."

United States District Court
Northern District of California

Given that the amount sought is less than both the agreed-upon number in the Settlement Agreement and the lodestar calculation, and especially since it includes a request for reimbursement of fees, the requested attorneys' fees and costs are reasonable.  The Court will therefore award Class Counsel the $52,500 it seeks.

B.    <u>Administration Costs</u>

The Settlement Agreement stated that Defendant would be responsible for paying the costs of administration separate from the Settlement Fund.  (Dkt. No. 49-1 ¶ 17.5.)  Courts regularly award administrative costs associated with providing notice to the class.  *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016).  However, the Settlement Agreement and Notice did not allot a specific amount towards administration costs, and Plaintiffs have not provided any information in their motion for final approval on this issue. However, because the settlement administrative costs do not come from a common fund with the Class Members' recovery, and no Class Member has objected to the payment of administration costs, the Court is satisfied that the amount Defendant will pay for administration of the Settlement Agreement is reasonable and appropriate.

C.    <u>Statutory Awards</u>

The Court also preliminarily approved the Settlement Agreement's provision of a statutory award to each named Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), which provides for an additional recovery for each named plaintiff of up to $1,000 per plaintiff.  *Schuchardt*, 2016 WL 232435, at *10.  The Court is unaware of any changes that would alter this analysis.  Accordingly, the Court approves the $1,000 statutory award to each named Plaintiff.

**CONCLUSION**

For the reasons described above, the Court GRANTS Plaintiffs' motion for final approval of the parties' Settlement Agreement.  In addition, the Court GRANTS Plaintiffs' motion for attorneys' fees and costs, and awards the following: $52,500 in attorneys' fees and costs; and a $1,000 statutory award to each named Plaintiff.

The Clerk is directed to close this case.

This Order disposes of Docket Numbers 51 and 52.

**IT IS SO ORDERED.**

Dated: April 28, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California